24-723(L)
Mohamed v. Bondi

BIA
Schultz, IJ
A216 334 856

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of January, two thousand twenty-six.

PRESENT:
> RICHARD J. SULLIVAN,
> WILLIAM J. NARDINI,
> EUNICE C. LEE,
> *Circuit Judges.*

_____

ALI ABDOU MOHAMED,
> *Petitioner,*

v.

PAMELA BONDI, UNITED STATES ATTORNEY GENERAL,
> *Respondent.*

24-723(L),
24-1544(Con)
NAC

_____

| FOR PETITIONER: | Olivia F. Bensinger, Shaheen & Gordon, P.A., Concord, NH. |

**FOR RESPONDENT:** Brian M. Boynton, Principal Deputy Assistant Attorney General; Sabatino F. Leo, Assistant Director; Nancy D. Pham, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of these petitions for review of two Board of Immigration Appeals ("BIA") decisions, it is hereby ORDERED, ADJUDGED, AND DECREED that the petitions for review are DENIED.

Petitioner Ali Abdou Mohamed, a native and citizen of Djibouti, seeks review of (1) a February 29, 2024 decision of the BIA that affirmed a September 21, 2023 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), *In re Ali Abdou Mohamed*, No. A216 334 856 (B.I.A. Feb. 29, 2024), *aff'g* No. A216 334 856 (Immigr. Ct. Batavia Sep. 21, 2023), and (2) a May 16, 2024 decision of the BIA denying his motion to reopen, *In re Ali Abdou Mohamed*, No. A216 334 856 (B.I.A. May 16, 2024). We assume the parties' familiarity with the underlying facts and procedural history.

## I.      Asylum, Withholding of Removal, and CAT

In these circumstances, we review the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review factual

2

findings for substantial evidence. *Wei Sun v. Sessions*, 883 F.3d 23, 27 (2d Cir. 2018). Under this standard, "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review questions of law *de novo*. *Wei Sun*, 883 F.3d at 27.

An asylum applicant bears the burden of proof to demonstrate eligibility for relief. *See* 8 U.S.C. § 1158(b)(1)(B)(i). Absent past persecution, an applicant may establish eligibility for asylum by demonstrating a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(2); *accord Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). To do so, an applicant must show either a reasonable possibility that he would be singled out for persecution or that the country of removal has a "pattern or practice" of persecuting similarly situated individuals. 8 C.F.R. § 1208.13(b)(2)(iii)(A). Where an applicant's claim is based on activities in the United States, the applicant "must make some showing that authorities in his country of nationality are either aware of his activities" or that there is "a reasonable possibility" of them "becom[ing] aware of his activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008) (quotation marks omitted).

"The testimony of the applicant may be sufficient to sustain the applicant's

3

burden without corroboration, but only if the applicant satisfies the trier of fact that the applicant's testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(ii); *see also id.* § 1231(b)(3)(C); *Wei Sun*, 883 F.3d at 28. "In determining whether the applicant has met the applicant's burden, the trier of fact may weigh the credible testimony along with other evidence of record. Where the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence." 8 U.S.C. § 1158(b)(1)(B)(ii); *see also id.* § 1231(b)(3)(C).

The agency may find testimony credible but "still decide that the testimony falls short of satisfying the applicant's burden of proof, either because it is unpersuasive or because it d[oes] not include specific facts sufficient to demonstrate that the applicant is a refugee." *Pinel-Gomez v. Garland*, 52 F.4th 523, 529–30 (2d Cir. 2022) (quotation marks omitted); *see also Wei Sun*, 883 F.3d at 28 (holding that "an applicant may be generally credible but his testimony may not be sufficient to carry the burden of persuading the fact finder of the accuracy of his claim of crucial facts if he fails to put forth corroboration that should be readily

4

available"). This lack of corroboration can be an independent basis for the denial of relief if the agency identifies reasonably available evidence that should have been presented. *Wei Sun*, 883 F.3d at 28–31. Before denying a claim solely on an applicant's failure to provide corroborating evidence, however, an IJ must identify specific pieces of missing documentation, explain why it was reasonably available, provide the applicant with an opportunity to explain the omission, and assess any explanation. *Id.* at 31. This need not "be done *prior* to the IJ's disposition of the alien's claim."[1] *Id.* "No court shall reverse a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless . . . a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4).

The agency did not err in requiring evidence to corroborate Mohamed's claim that he has a well-founded fear of persecution in Djibouti on account of his mother's online activism from the United States given that both his and his mother's testimony was vague as to who threatened his mother, who would pose

---

[1] *Wei Sun*'s deference to the agency's interpretation of the statute remains valid after *Loper Bright Enterprises v. Raimondo*, which announced a "change in interpretive methodology," but concluded that prior decisions finding specific agency actions lawful remain "subject to . . . *stare decisis*." 603 U.S. 369, 412 (2024).

a threat to Mohamed in Djibouti, and whether there was a connection between his mother's activism and mistreatment experienced by other relatives. *See* 8 U.S.C. §§ 1158(b)(1)(B)(ii), 1231(b)(3)(C); *see also Wei Sun*, 883 F.3d at 28. Further, the agency did not err in finding that the record evidence did not corroborate Mohamed's or his mother's testimony that officials in Djibouti are aware of his mother's online activity or are interested in harming Mohamed as a result. *See* 8 U.S.C. §§ 1158(b)(1)(B)(ii), 1231(b)(3)(C); *see also Wei Sun*, 883 F.3d at 28. The evidence showed that Mohamed's mother posted videos and information related to issues facing the Afar people generally across the region of the Horn of Africa and ethnic violence in countries other than Djibouti, but did not criticize the government of Djibouti; she received threats from two individuals living outside of Djibouti; and ethnic animosity toward the Afar people had been expressed online. Such evidence does not corroborate Mohamed's claim that he faces persecution in Djibouti. Accordingly, given the vagueness of the testimony and lack of evidence that anyone in Djibouti is interested in targeting Mohamed, the IJ did not err in requiring additional corroboration. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *Wei Sun*, 883 F.3d at 28.

Further, the IJ identified the specific missing evidence: statements from

6

relatives to confirm and elaborate on the testimony that family members in Djibouti lost jobs and were otherwise mistreated because of Mohamed's mother's online political activism, that Mohamed's uncle was president of the opposition party, and that a cousin was tortured and murdered. *See Wei Sun*, 883 F.3d at 31. Nor did the IJ err in finding this evidence reasonably available given testimony that Mohamed's mother was in frequent contact with her brother and sister but had not asked for such statements. *See* 8 U.S.C. § 1252(b)(4) (providing that no court shall reverse a decision "with respect to the availability of corroborating evidence" unless the court "is compelled to conclude that such corroborating evidence is unavailable"); *Wei Sun*, 883 F.3d at 31 ("[T]he alien bears the ultimate burden of introducing such evidence without prompting from the IJ." (quotation marks omitted)). Without such evidence, Mohamed failed to show that anyone in Djibouti had knowledge of his mother's activism or would seek to harm him on that ground.

We also find no error in the IJ's denial of Mohamed's request to keep the record open after the conclusion of his merits hearings so he could attempt to obtain corroborating statements from relatives. It was unclear what evidence would be available and how long it would take to obtain, and the IJ noted that

7

Mohamed could move for the acceptance of late evidence if such evidence were obtained. *See Morgan v. Gonzales*, 445 F.3d 549, 551 (2d Cir. 2006) ("IJs are accorded wide latitude in calendar management," and such decisions are reviewed "under a highly deferential standard of abuse of discretion."); *Wei Sun*, 883 F.3d at 31 (concluding that a statement from a spouse "is not unique with respect to an asylum claim" such that a continuance is merited to obtain the statement); *Matter of L-A-C-*, 26 I. & N. Dec. 516, 522 (B.I.A. 2015) ("[A] continuance would typically be warranted where the Immigration Judge determines that that the applicant was not aware of a unique piece of evidence that is essential to meeting the burden of proof."). In sum, the agency did not err in concluding that Mohamed failed to satisfy his burden of proof with reliable corroboration. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); *Wei Sun*, 883 F.3d at 28.

The agency also did not err in finding that Mohamed failed to establish a well-founded fear of persecution by showing that he would be singled out for persecution or that there is a pattern or practice of persecution of similarly situated individuals in Djibouti. *See* 8 C.F.R. § 1208.13(b)(2). As the agency found, Mohamed did not show that officials or others in Djibouti are aware of his mother's online activity and would harm him as a result because, as discussed

8

above, he submitted evidence that only two Djiboutians living outside of that country had made threats against his mother and her family. *See Hongsheng Leng*, 528 F.3d at 143; *Y.C. v. Holder*, 741 F.3d 324, 334 (2d Cir. 2013) (finding speculative a petitioner's assertion that government officials are aware of every anti-government article or comment posted online).

Further, there is no merit to Mohamed's argument that the agency ignored evidence of a pattern and practice of imprisoning activists and journalists who criticize the government and organize protests; that evidence is immaterial as it does not show that the children of such activists and journalists face a pattern or practice of persecution and because, as noted above, he has submitted no evidence that his mother has criticized the Djiboutian government online. *See Hongsheng Leng*, 528 F.3d at 142 (noting that an applicant can establish a well-founded fear of persecution by showing "the existence of a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant . . . and . . . establishing his or her own inclusion in, and identification with, such a group" (brackets and quotation marks omitted)). And, as the agency found, the record does not support Mohamed's contention that there is a pattern or practice of persecution of the Afar people in Djibouti because the record shows

only that the Afar have minimal representation in the Djiboutian government and have difficulty finding work. *See Ivanishvili v. U.S. Dep't of Just.*, 433 F.3d 332, 341 (2d Cir. 2006) ("[P]ersecution does not encompass mere harassment."); *Mei Fun Wong v. Holder*, 633 F.3d 64, 72 (2d Cir. 2011) ("[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." (quotation marks omitted)). Without more, those data points are insufficient to establish persecution.

Accordingly, because Mohamed did not adequately corroborate his claim that he would be singled out for persecution, show an objectively reasonable fear of being singled out for persecution, or demonstrate a pattern or practice of persecution of similarly situated individuals, the agency did not err in finding that he failed to satisfy his burden of establishing a well-founded fear of persecution. *See* 8 U.S.C. § 1158(b)(1)(B)(ii); 8 C.F.R. § 1208.13(b)(2); *Wei Sun*, 883 F.3d at 27–28; *Hongsheng Leng*, 528 F.3d at 142–43. Those findings were dispositive of asylum, withholding of removal, and CAT relief because all three claims were based on the same factual predicate. *See* 8 C.F.R. §§ 1208.13(b), 1208.16(b); *Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010); *Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

## II. Motion to Reopen

We review the denial of motions to reopen for abuse of discretion and any country conditions determinations for substantial evidence. *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 168–69 (2d Cir. 2008). "[A] motion to reopen shall state the new facts that will be proven at a hearing to be held if the motion is granted, and shall be supported by affidavits or other evidentiary material." 8 U.S.C. § 1229a(c)(7)(B). "A motion to reopen proceedings shall not be granted unless . . . [the] evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1); *see also INS v. Abudu*, 485 U.S. 94, 104–05 (1988) (providing that the BIA may deny a motion to reopen if "the movant has not introduced previously unavailable, material evidence"). The BIA may deny a motion to reopen if "the movant has not established a prima facie case for the underlying substantive relief sought." *Abudu*, 485 U.S. at 104.

The BIA did not err in finding that the evidence presented with the motion to reopen was previously available. The statements from relatives and acquaintances were prepared after Mohamed's hearings, but they could have been obtained and presented earlier because they discussed events that took place prior

to the hearings. *See Norani v. Gonzales*, 451 F.3d 292, 294 (2d Cir. 2006) (providing that evidence is previously available if it "could have been presented at the hearing before the IJ"). That finding alone was dispositive of the motion to reopen. *See* 8 C.F.R. § 1003.2(c)(1); *see also Abudu*, 485 U.S. at 104–05.

The BIA also did not err in its alternative finding that the additional evidence would not compel a different outcome as it did not establish Mohamed's prima facie eligibility for relief. *See Abudu*, 485 U.S. at 104. As the BIA found, the statements did not include details demonstrating that officials in Djibouti knew of Mohamed's mother's online activities or that they retaliated against family members for that reason, or that anyone in Djibouti had threatened his mother or her family members.

For the foregoing reasons, the petitions for review are DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court